[Cite as *In re Estate of Germalic*, 2016-Ohio-7885.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103380**

# IN RE: ESTATE OF ANGELA GERMALIC, DECEASED

[Appeal By James Germalic]

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Probate Division
Case No. 2015-EST-206390

**BEFORE:** Keough, P.J., Stewart, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** November 23, 2016

**FOR APPELLANT**

James Germalic, pro se
5615 Alber Avenue
Parma, Ohio 44129


**ATTORNEYS FOR APPELLEES**

James P. Koscianski
John P. Koscianski
Koscianski & Koscianski, Co., L.P.A.
5700 Pearl Road, Suite 302
Parma, Ohio 44129

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Angela Germalic died testate on December 6, 2013. Her will named her son, Richard Germalic, as executor of her estate, and John Longo as successor executor if Richard were unable to serve. It made the following bequests:

> To my son Richard I give 60% of my money, plus the house on West 54th Street. To my son James I give 40 percent of my money with forty thousand now. To Lenore Kalom I give $10,000 plus my wedding ring. Also I give $5,000 to John Longo. I want my sons James or Richard to take care of my funeral arrangements.

{¶2} After Angela's death, Richard Germalic contacted Justin Zabor of Zabor Funeral Home ("Zabor") regarding funeral arrangements, and contracted for $13,403.75 of funeral services from Zabor. To date, Zabor has not received any payment for the services it provided.

{¶3} In the months after Angela's death, neither Richard or James Germalic, nor Longo took any steps to open an estate in which Zabor could have filed a claim for monies owed. Consequently, on April 15, 2015, Justin, acting as an agent for the funeral home, filed an application to probate Angela's will and administer her estate.

{¶4} On April 15, 2015, the probate court admitted the will to probate and scheduled a hearing for June 2, 2015. The probate court sent a notice of the hearing to James Koscianski, Justin's attorney, advising of the hearing and ordering that he "notify all interested parties by certified mail" regarding the hearing.

{¶5} On May 27, 2015, Patricia Hurtuk, a friend of the Germalic family, filed an application for authority to administer Angela's estate.

**{¶6}** On June 2, 2015, a probate court magistrate conducted a hearing regarding the competing applications for authority to administer the estate. No transcript was made of the hearing.

**{¶7}** In his subsequent decision, the magistrate found that Justin, Koscianski, and Hurtuk were present at the hearing. The magistrate further found that "[s]ervice was perfected according to law."

**{¶8}** The magistrate's decision stated that Hurtuk testified that she has never served as a fiduciary and was unsure if she could be bonded, but that she could follow the directives of the will. The magistrate's decision stated that Justin testified regarding the contract for funeral arrangements for Angela, and that no payments had been made on the outstanding balance. Justin testified that he was fully bondable and understood the role and duties of a court fiduciary.

**{¶9}** Although the magistrate's decision did not indicate that James was present at the hearing, it noted that James testified that he had not made an application to administer his mother's estate because he was "too busy with more pressing political activities." The decision further noted that James testified that Richard is a joint tenant with his deceased mother on a $300,000 bank account, but refuses to obtain identification, such as a state ID, necessary to withdraw money from the bank in order to pay the outstanding balance for the funeral expenses.

**{¶10}** The magistrate's decision found that the issue before the court was the suitability of the applicants to serve as administrator of the estate. The magistrate found

that Hurtuk was not suitable due to her lack of experience and inability to be bonded. The magistrate found that Justin, as agent for a creditor of the estate, was a suitable candidate to serve as fiduciary, and that the funeral home should have the opportunity to settle the estate after waiting 18 months for payment of its claim. Accordingly, the magistrate recommended that Justin's application to administer the estate be approved upon the posting of a $40,000 bond.

{¶11} James subsequently filed objections to the magistrate's decision. In his objections, he asserted that: 1) the amount of bond required of Justin was insufficient; 2) Hurtuk would be a better fiduciary because unlike Justin, she is not a creditor of the estate; and 3) service was not perfected on Richard. James further alleged that he too was not served at the correct address. According to James, attorney Koscianski purposely did not properly serve him or Richard so that neither he nor Richard would appear for the hearing, and Justin would be appointed administrator.

{¶12} Subsequently, James supplemented his objections to the magistrate's decision to include an undated, unsigned letter from Richard in which Richard stated that he was not notified by mail of the hearing, and an unsworn statement from Lenore Kalom in which she asserted that based on conversations she had with other persons, attorney Koscianski could not be trusted to timely and correctly administer an estate.

{¶13} The trial court subsequently overruled James's objections to the magistrate's decision and adopted the magistrate's decision appointing Justin administrator of the estate upon the posting of a bond. This pro se appeal by James followed.

## II. Analysis

### A. Joint Account as Part of Estate

{¶14} In his first assignment of error, James contends that Richard is a joint tenant with his deceased mother on a bank account that could be used to pay the funeral expenses. He contends that Justin does not intend to include this account in the inventory of estate assets, however, but instead plans to sell the house that Richard lives in to obtain the funds to pay the funeral expenses, and then make Richard a ward of the state.

{¶15} This assignment of error is beyond the scope of the appeal. This appeal is from the trial court's order appointing Justin administrator of the estate and, accordingly, is limited to any issues relating to the hearing before the magistrate regarding that appointment, and the propriety of the court's appointment of Justin as administrator. The trial court's judgment overruling James's objections to the magistrate's decision and appointing Justin administrator made no reference whatsoever to any inventory of the estate. Accordingly, James's assignment of error is beyond the scope of the appeal. The first assignment of error is therefore overruled.

### B. Appointment of a Creditor as Administrator of the Estate

{¶16} In his second assignment of error, James contends that the trial court erred in appointing Justin, as an agent of Zabor Funeral Home, as administrator because Zabor is a creditor of the estate.

{¶17} This argument is without merit. The right to appointment as administrator of a decedent's estate is controlled by R.C. 2113.06.

{¶18} Under R.C. 2113.06(C):

If there are no persons entitled to administration, if they are for any reason unsuitable for the discharge of the trust, or if without sufficient cause they neglect to apply within a reasonable time for the administration of the estate, their right to priority shall be lost, and the Court shall commit the administration to some suitable person * * *. The person granted administration may be a creditor of the estate.

{¶19} Thus, R.C. 2113.06(C) specifically provides that one who is entitled to priority in the appointment of administration (such as Richard or James as next of kin) loses such right if the person having such right fails to apply within a reasonable time for his own appointment as administrator of the estate. The statute further provides that in such cases, the court may appoint a suitable person, including a creditor of the estate, as administrator. Furthermore, the Ohio Supreme Court has held that where one has a claim against an estate in which no administrator has been appointed, it is incumbent upon such creditor to procure the appointment of an administrator against whom he can proceed. *In re Tuthill*, 3d Dist. Hardin No. 6-89-5, 1990 Ohio App. LEXIS 2439, *3, (June 13, 1990), citing *Wrinkle v. Trabert*, 174 Ohio St.233, 188 N.E.2d 587 (1945).

{¶20} Here, the record reflects that neither Richard nor James, as next of kin, nor Longo, as successor executor, applied within a reasonable time after Angela's death for appointment as administrator of her estate. Thus, Justin, as agent for Zabor Funeral Home, which has a claim against the estate, was correct in seeking his own appointment

as administrator of the estate because those entitled to appointment as of right had failed to do so. Furthermore, because R.C. 2113.06 specifically allows the court to appoint a creditor of the estate as administrator, the trial court did not err in appointing Justin. The second assignment of error is overruled.

## C. James as Administrator

{¶21} In his third assignment of error, James contends that after the court denied Hurtuk's application, it should have allowed him, as next of kin, to apply to administer the estate, instead of appointing Zabor, a creditor of the estate, as administrator.

{¶22} This argument is likewise without merit. James could have applied at any time prior to the hearing — which took place some 18 months after Angela's death — for appointment to administer the estate. Because he did not do so, he lost his right to priority of appointment, and the court was authorized to appoint another suitable person as administrator. Upon finding that Hurtuk was not suitable to serve as administrator, the court had no obligation to allow James even more time to apply to administer the estate. The third assignment of error is overruled.

## D. Service

{¶23} After Justin applied to administer the estate, the magistrate ordered him, through his counsel, to notify all interested parties of the hearing pursuant to Civ.R. 73. In his fourth assignment of error, James contends that the hearing should not have proceeded because Richard was not properly served with notice of the hearing. Specifically, he contends that Justin served Richard at 7516 Dresden Avenue, Parma,

Ohio, a vacant house owned by Richard, even though Richard lives at 5835 W. 54th Street in Parma, where Zabor Funeral Home sent its bills for the unpaid funeral expenses.

**{¶24}** Civ.R. 73(E) governs service of notice within the probate division of the court of common pleas. The rule provides that notice shall be in writing and may be served by 1) delivering a copy to the person to be served; 2) leaving a copy at the usual place of residence; 3) by certified mail addressed to the person's usual place of residence, return receipt requested; 4) by ordinary mail after a certified mail envelope is returned showing it was refused or unclaimed; 5) by publication; or 6) by any other method the court may direct.

**{¶25}** The magistrate's decision reflects that the magistrate found that "service was perfected according to law." James has not provided this court with a transcript of the hearing and, therefore, we cannot evaluate the merits of this assignment of error. Because James failed to request a transcript, or provide us with any substitute statement of the evidence, we have no alternative but to presume the regularity and validity of the trial court's proceedings. *Ali v. Vargo*, 8th Dist. Cuyahoga No. 85244, 2005-Ohio-3156, ¶ 22.

**{¶26}** To support his argument, James refers us to an alleged letter from Richard in which Richard states that he was not given notice of the hearing. The letter is not addressed to anyone in particular, however, and is undated and unsigned. Furthermore, James asserts that he showed this letter to the magistrate, who read it at the hearing. Because James did not provide us with a transcript of the proceedings, we must presume

that the magistrate properly evaluated and determined the validity of the letter in rendering his ruling that service had been properly perfected on all interested parties, including Richard.   The fourth assignment of error is therefore overruled.

E.      Other Alleged Errors

{¶27} In his fifth assignment of error, James asserts, for various other reasons, that the hearing should not have gone forward.   For example, he contends that his fiancée was told by someone in the probate court that a creditor would not be appointed as administrator, and that a hearing would not proceed if an interested party had not been served.   He also asserts that the hearing should not have proceeded because Hurtuk had only recently filed her application to administer the will and had not yet served notice on all interested parties.

{¶28} There is nothing in the record to support James's assertions about what he was told, and because we have no transcript, we must presume regularity in the trial court's proceedings.   Accordingly, the fifth assignment of error is overruled.

F.      Timely Notice

{¶29} In his sixth assignment of error, James contends that although Justin gave him notice of the hearing, Justin did so only approximately 15 days prior to the hearing so that James could not respond in any meaningful way to its application to probate the will. Specifically, James contends that "although the letter of the law was observed, it was done in a mean-spirited way to knock us out."

{¶30} We find no merit to this assignment of error. James concedes that he received timely notice of the hearing, and that after receiving notice, the family decided that Hurtuk should apply to be appointed administrator, which she did. James or Hurtuk could have filed a motion for a continuance of the hearing if they needed more time to prepare, but they did not do so. Because James admittedly received timely notice of the hearing, the sixth assignment of error is overruled.

G.    Denial of Hurtuk's Application

{¶31} In his seventh assignment of error, James contends that the trial court erred in denying Hurtuk's application to administer the estate. He contends that Hurtuk has more concern for the Germalic family than Justin, and would be better able to deal with Richard than Justin. Although James's assertions may be true, because James did not provide a transcript of the hearing, we are constrained to presume the validity and regularity of the proceedings. Accordingly, the seventh assignment of error is overruled.

H.    A Hearing for James

{¶32} In his eighth assignment of error, James contends that he was not allowed to speak at the hearing before the magistrate. Specifically, he contends that when he tried to speak, the magistrate threatened to call the sheriff. James's assertions are curious because the magistrate's decision reflects that James testified at the hearing. However, once again, because we do not have a transcript of the proceedings before the magistrate, we must presume regularity. The eighth assignment of error is therefore overruled.

{¶33} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


KATHLEEN ANN KEOUGH, PRESIDING JUDGE

MELODY J. STEWART, J., and
MARY J. BOYLE, J., CONCUR